**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**GEORGE HICKS,**

     **Plaintiff,**

**vs.**                                                    **CASE NO. 1:07CV143-MP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

     **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for continuing disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be **reversed** and remanded for further proceedings.

**A.**     **PROCEDURAL HISTORY**

Plaintiff was awarded disability benefits on June 26, 1995, effective March 17, 1986, because of failed back syndrome, chronic pain syndrome, and depression.  After a continuing disability review, he was found to have medical improvement and benefits

ceased on January 1, 2002.  This decision was reviewed and after a hearing, the ALJ entered an unfavorable decision on February 3, 2005.   The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had not worked since March 17, 1986, because of status post multiple back surgeries , C4/C5 disc protrusion with myofascial/mechanical pain and an adjustment disorder with depressed mood, which are severe impairments, but do not meet the listings of impairments.  The ALJ found that Plaintiff's adjustment disorder caused only mild limitations.

The ALJ noted that Plaintiff was first found to be disabled in an decision dated June 26, 1995 (the comparison point decision) after a work related accident on February 10, 1986, and the ALJ found medical improvement since that decision.  (R. 13).  Specifically, he noted that Dr. Lowery reported that the lumbar fusion was intact and that levels of pain had lessened and activity tolerance had increased by November 1998.  (R. 14, 390).  However, increased pain and limitation were noted following a car accident on April 23, 1999, for which Dr. DePaz treated him regularly with maximum medical improvement noted on October 14, 1999. (R. 14).   Plaintiff reported considerable improvement by May 16, 2000.  (R. 14).  Improvement with his neck pain was again reported in August 2000, but lower back pain persisted resulting in a permanent impairment rating by Dr. DePaz on October 17, 2000.  (R. 15).  Injections were begun in January 2001, and Dr. DePaz continued treating him for pain through the

end of 2001, when apparently Plaintiff moved, then he resumed treatment on August 27, 2004, after returning to Florida. (R.17). Dr. DePaz completed a Residual Functional Assessment dated September 19, 2004, finding that Plaintiff could sit up to 30 minutes at a time for a total of 4 to 5 hours a day, could stand up to 30 minutes at a time for a total of 3 to 4 hours a day, and could work 5 to 6 hours a day with a sit/stand option. He rated Plaintiff's chronic pain as moderate to marked with mild to moderate restrictions on his ability to complete a normal work day. (R. 17).

The ALJ found improvement in his back condition "even though he continues to have some pain and difficulties, he is able to stand, walk, and sit well enough to do his usual activities." (R. 17). Likewise, the ALJ found that he continued to experience "some adjustment difficulties due to his physical impairments; however, he is able to communicate well, act in his own interests, adjust to ordinary emotional stresses, and do his usual daily activities." (R. 18). The ALJ assessed Plaintiff as being capable of light work, giving greater weight to the opinions of Drs. Chodosh and Nazario, who examined Plaintiff in late 2001 at the request of the Social Security Administration, to support this finding, and gave less weight to the opinion of Dr. DePaz, because his physical assessment was contrary to his treatment notes, particularly his impairment rating in October 2000 of 10% whole body, and because Dr. DePaz had not treated Plaintiff regularly since 2001. (R. 20). Plaintiff's past relevant work was medium, but using the Medical-Vocational Guidelines, the ALJ found that there was significant work that he could perform, and therefore, his disability ceased on January 1, 2002.

**No. 1:07CV143-MMP/AK**

C.    **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in not using a vocational expert because of Plaintiff's severe non-exertional impairments, that the ALJ did not follow the Eleventh Circuit pain standard, and the ALJ erred in not adopting the treating physician's opinion that pain precluded Plaintiff from working.

The government responds that the ALJ did not find that Plaintiff's mental impairment was severe because he had not sought any treatment nor took any medication for it.  The records of Drs. Chodosh, Nazario, and the state agency consultants, found him only mildly limited because of his mental disorder.

The ALJ articulated several reasons why he did not accept Plaintiff's allegations of pain: the objective evidence was inconsistent with severe pain, that Plaintiff had sought infrequent medical treatment for his condition, and Plaintiff's own reported daily activities were inconsistent with debilitating pain.  Finally, Plaintiff contends that the ALJ should have adopted the disability finding of Dr. DePaz, but he had not sought treatment from this source since 2001, so that the ALJ could properly consider him no longer a treating physician.  Thus, Dr. DePaz's assessment was based on examinations and treatment records that were over 3 years old.  His functional assessments also did not preclude the exertional requirements for light work.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:07CV143-MMP/AK**

D.      **STANDARD OF REVIEW**

Once a claimant becomes entitled to disability benefits, their continued entitlement must be reviewed periodically.  20 CFR §§404.1594; 416.994(a).  An individual's disability will be found to have ceased if there has been medical improvement related to the individual's ability to work or one of the exceptions to medical improvement applies and the individual is able to engage in substantial gainful activity.  Id.  Medical improvement is defined as the decrease in the medical severity of the impairment(s) which were present at the time of the most recent favorable medical decision that the claimant was disabled.  20 CFR §§404.1594; 416.994(b)(1)(I).

There are eight sequential steps the ALJ uses in reviewing the question of whether disability continues.  20 CFR §§404.1594(f); 416.994(f).  The review may end and benefits may be continued at any point if it is determined that the individual is still unable to engage in substantial gainful activity.

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have a severe impairments that meet or equal those l listed in Appendix 1 of 20 C.F.R. Part 404?

3.      Has there been medical improvement?

4.      Is it related to the ability to work?

5.      Do any exceptions to the medical improvement standard apply?

6.      Does the individual have a severe impairment or combination of impairments?

7.      Can the individual do past relevant work?

**No. 1:07CV143-MMP/AK**

8.      Can the individual do any other work?

The exceptions to medical improvement referred to in Step 4 are:

1.      The individual has benefitted from advances in medical or vocational therapy or technology (related to his ability to work).

2.      The individual has undergone vocational therapy (related to his ability to work).

3.      Based on new or improved diagnostic or evaluative techniques, the individual's impairment is not as disabling as it was considered to be at the time of the most recent favorable decision.

4.      Any prior disability decision was in error.

5.      The individual is currently engaging in substantial gainful activity.

The regulations provide that the review may end at any time and the individual's disability may be found to have ended at any time if one of the following exceptions is established:

1.      A prior determination was fraudulently obtained.

2.      The individual does not cooperate.

3.      The individual cannot be found.

4.      The individual fails to follow prescribe treatment which would be expected to restore his ability to engage in substantial gainful activity.

20 CFR §§404.1594; 416.994(e).

If a claimant's most recent favorable decision was based on meeting a listing and medical improvement has occurred, the ALJ will find that the medical improvement was related to the ability to work.  20 CFR §§404.1594; 416.994(b)(2)(iv)(A).

**No. 1:07CV143-MMP/AK**

The regulations provide that an individual's disability will be found to have ended in the month the evidence shows that the individual is no longer disabled, but not earlier than the month in which the Social Security Administration mails a notice providing the information that shows an individual is no longer disabled.  20 CFR §§404.1594; 416.994(g).

**E.    SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was an operating room technician in 1986 when he fell down a stairwell at work carrying a box.  (R. 89).  He was initially treated with bed rest, but his condition worsened and he had a bulging disc removed.  (R. 96, 282-281).  Psychiatric problems developed after this operation and he was hospitalized several times with hallucinations and suicidal ideation.  (R. 135).

When Dr. DePaz began treating him in 1988, he believed his back problems were degenerative and related to scarring rather than acute compression issues and believed that his major role in Plaintiff's treatment would be to determine his physical abilities and help him to pursue vocational goals in spite of these limitations.  However, Dr. Gary Lowery was consulted in February 1989, when Plaintiff was still unable to work, and he found that there was an abnormal disk protrusion and herniation.  (R. 267-276).  Surgery was performed in May 1989, which Plaintiff reported improved his pain levels.  (R. 265-266).  It was believed that he would not reach maximum medical improvement for 1 year and would need retraining into a job requiring no physical labor.

**No. 1:07CV143-MMP/AK**

(R. 265).  One year later his condition had worsened requiring an emergency room visit with increase pain and a revision surgery was suggested.  (R. 264).

Treatment notes from Dr. DePaz following the spinal fusion surgery indicate that Plaintiff reported that he was better than before the surgery with increased activity tolerance until 1994 when he began having neck pain.  (R. 236-244).  Dr. Lowery wrote on April 4, 1994, that he believed Plaintiff was now permanently disabled as a result of 4 back surgeries, chronic pain, and psychiatric disorders.  (R. 235).

Plaintiff then had another accident on April 23, 1999, and Dr. DePaz found on MRI some abnormalities (R. 385), which he treated with injection, physical therapy, and continued medication.  (R. 379).  The injection resulted in 40% improvement.  (R. 372). He was considered at MMI on October 14, 1999, and future medical treatment "would be in the range of PT 6-10 visits per year for the next 3 years.  He will undergo medical follow up with our office on an approximate 3-6 month basis for the next 3 years and then on an as needed basis."  (R. 365).

Treatment notes from Dr. Gossinger indicate significant issues with hallucinations, which he treated with medication and regular therapy sessions with good results.  (R. 213-234).

Dr. Nazario performed a consultative mental status examination on December 4, 2001, and found him to be suffering from self reported hallucinations of people with funny heads, but Dr. Nazario noted "no obvious mental impairment" and that Plaintiff

**No. 1:07CV143-MMP/AK**

had not sought mental health treatment since 1995 because he did not believe he needed it.  (R. 398).

Dr. Chodosh examined Plaintiff on November 20, 2001, and found him to have a modest decrease in spine mobility secondary to fusion, but that he was otherwise able to walk and stand normally.  (R. 391-397).  He found him capable of lifting up to 25 pounds.  (R. 394).

A Psychiatric Review Form dated December 18, 2001, found him to be suffering from an Adjustment Disorder with Depressed Mood, not severe, with mild to no limitations.  (R. 400-414).  Another form done on February 18, 2002, found mild to no limitations as well.  (R. 422-435).

A Residual Functional Assessment by a non-examining physician dated February 22, 2002, found him capable of light work.  (R. 414-421).

A Residual Functional Assessment by Dr. DePaz dated September 19, 2004, shows considerable limitation due to four back surgeries and chronic pain of a marked degree with mild to moderate limitations in his ability to perform work related functions.  (R. 456-465).  There is also a referral at this time from Dr. DePaz for psychiatric treatment.  (R. 466-467).

In a medical record dated August 27, 2004, Dr. Berk examined and evaluated him and found significant pain and limitation, but wrote that he had little to offer him, except referral to a pain clinic.  (R. 468-469).

**No. 1:07CV143-MMP/AK**

A recent functional assessment by a physical therapist found him significantly compromised by pain, but capable of the physical demands of light/sedentary work. (R. 473-476).

**F.    SUMMARY OF THE ADMINISTRATIVE HEARING**

At the hearing, Plaintiff's attorney agreed to provide the medical records from Dr. Cunningham in Montgomery, Alabama, (R. 482), [during the time Plaintiff was out of Florida], but no such records are in the record. Plaintiff's attorney summarized his history as back surgeries in 1986, then three surgeries by Dr. Lowery in 1989 and 1991. (R. 490). Plaintiff describes his pain as a "6" on a scale from 1 to 10. (R. 495). He shifts position about every 20 minutes and pushes and then pulls on his belt around the hip area to relieve some pain, but does nothing else to relieve pain like ice or heat or exercise. (R. 497-498). He quit mental health treatment because the "voices" told him that Dr. Gossinger was trying to hurt him. (R. 492).

[There are many gaps in the record noted "INAUDIBLE."]

**G.    DISCUSSION**

a)    Use of the Guidelines

At step five the Commissioner may in certain cases rely upon the grids to carry his burden of proving that there are jobs which claimant can do despite his inability to perform his past relevant work. The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the

**No. 1:07CV143-MMP/AK**

designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan,
976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558
(11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of [] work .
. . that it is unnecessary to call a vocational expert to establish whether the claimant can
perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200,
1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not
appropriate when claimant has a nonexertional impairment that significantly limits his
basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990). Where
use of the grids is not appropriate, and the Commissioner has not made specific
findings as to the availability of particular jobs that exist in substantial numbers in the
national economy which the Claimant can do despite his limitations, the proper course
is for the court to remand for such factfinding. Welch v. Bowen, 854 F.2d 436, 439-440
(11th Cir. 1988).

Pain is a nonexertional impairment which, if it significantly limits basic work
activities, precludes application of the grids. See Foote v. Chater, 67 F.3d at 1559. A
nonexertional limitation is anything that would prevent an individual from meeting the
demands of a work environment other than the physical strength requirements of a job
such as mental illness, intellectual levels, and postural or environmental restrictions.
Rogers v. Commissioner, 225 F.3d 659 (6th Cir. 2000); 20 CFR §404.1569a.

In the instant case, the ALJ found at step two that Plaintiff had back issues with
"myofascial/mechanical pain," and adjustment disorder, which were severe impairments

**No. 1:07CV143-MMP/AK**

within the meaning of the regulations.  The medical records are replete with references to pain, which is by history the primary element of a back disorder, and no doctor opined that Plaintiff's condition would not or did not produce the level of pain reported.  Since the ALJ himself included pain in his findings and all the medical evidence supported a level of pain that would significantly affect his ability to work, it should have been considered a non-exertional impairment and a vocational expert should have been called to testify at the hearing.  Thus, it was error for the ALJ to base his decision on the Medical-Vocational Guidelines.

Further, it is the opinion of the undersigned that use of the guidelines was also precluded because of Plaintiff's mental impairment.  Plaintiff reported at the hearing that he continued to hear voices and have hallucinations, although he was unable to articulate with any degree of particularity his current status either mentally or physically. The ALJ's  line of inquiry was either not audible upon transcription or not done.  In his findings, the ALJ based his determination of medical improvement on evidence which showed "even though he continues to have some pain and difficulties, he is able to stand, walk, and sit well enough to do his **usual activities**.  The record also shows that the claimant continues to mentally experience some adjustment difficulties due to his physical impairments; however, he is able to communicate well, act in his own interests, adjust to ordinary emotional stresses, and do his **usual daily activities**."  (R. 18). (Emphasis supplied).

**No. 1:07CV143-MMP/AK**

However, between the "inaudible" notations and Plaintiff's inability to follow a line of questioning, it is not clear what Plaintiff's usual daily activities were.  Further, the evidence at the hearing was clearly contrary to the ALJ's finding that Plaintiff can communicate well and act in his own best interests.  The ALJ found Plaintiff's demeanor at the hearing to be particularly persuasive regarding his apparent lack of pain and discomfort, but the difficulties at the hearing regarding Plaintiff's ability to communicate were also apparent and should have been noted.  For example:

BY ADMINISTRATIVE JUDGE:

Q.  They haven't found any sign of problem in your back?

A.   She said I have an attitude?

Q.  No.

A.  I feel like I got a good relationship.

Q. [inaudible]

A.  No.  I have a mother, a sister.  Once a day I might go out to Wal-Mart and go out and get something to eat.

Q. [inaudible]

A.  For that one trip?

Q.  Yes.

A.  I just have to – I'll go that day and that's it.

BY ADMINISTRATIVE JUDGE:

Q.  Okay, how long have you had [inaudible].

**No. 1:07CV143-MMP/AK**

A.  Every four years.

Q.  You have to [inaudible].

A.  No.  I have to get it through the doctors.

Q.  And who is the doctor?

A.  Dr. Cunningham or something like that.

Q.  In '90 – in 2002?

A.  Yes.

Q.  [inaudible]

A.  Yes.

Q.  And the State of Florida recognizes that?

A.  Right.  Yes.  Pretty Good.

Q.  Okay.  Concentrating on a football game [inaudible]

A. Pain.

Q.  Pain.  Okay.

A.  Yes.

Q.  And then you said you were hoping for [inaudible] seeing a doctor now, Dr.

Depos on occasion?

A.  Yes.  All right.  I hear voices.

Q.  The same voices?

A.  Different voices.

Q.  How do you feel?

**No. 1:07CV143-MMP/AK**

A. Jittery.

Q. Jittery.

A. I cannot understand.

Q. Okay. Did they tell you to do things?

A. I could be driving in a car and open the door.

Q. What is it and do you know what they're saying?

A. Yes. And then they tell me to –like if I see sand or something like that, they'll tell me to run into that dirt, you know. And I can see trees aside of the road and they'll tell me to run into a tree.

The majority of Plaintiff's testimony is equally as disjointed. It is also questionable that a person who decides he does not need mental health treatment because voices told him to stop is capable of acting in his own best interests. The Court is aware that Dr. Nazario, a one time consultative examiner, found Plaintiff capable of handling his own finances and did not note any significant mental limitations, as did the other non-examining state agency consultants. However, Dr. Nazario was not Plaintiff's treating physician, and his one time examination was in 2001. Obviously, things were different in 2004, if the transcript of the hearing is any evidence of his mental state.

After careful consideration, the undersigned is of the opinion that the frequent interruptions in the transcription of the hearing, the limited inquiry from the ALJ, and Plaintiff's failure to respond coherently to the questions that were addressed to him, all

**No. 1:07CV143-MMP/AK**

militate in favor of having an additional hearing with a vocational expert. Any hypothetical posed to a vocational expert should include all of Plaintiff's impairments, including pain and his mental condition.

b)   Pain Standard

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of

**No. 1:07CV143-MMP/AK**

pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d 1009, 1011

(11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of pain, he must

articulate explicit and adequate reasons, and these reasons must be based on

substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure

to articulate adequate reasons for discrediting pain testimony mandates that the

testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541,

1545 (11th Cir. 1988).

The ALJ based his finding that Plaintiff's allegations are not entirely credible on

some factors that are not fully supported by the record such as Plaintiff's reported daily

activities.  As noted above, it is not clear what the daily activities are because the

hearing transcript was not fully audible and Plaintiff did not answer questions

coherently.  Also, the ALJ based his findings that Plaintiff's pain had improved and was

not significantly limiting on the reports and functional assessments of non-examining

consultants or one-time examiners, and he expressly rejected the 2004 reports and

assessments of Plaintiff's treating physician Dr. DePaz because he had not examined

him in 3 years.  However, the reports of Dr. Chodosh and Nazario were also 3 years old

at the time of the hearing.  The 2004 assessment indicates that it is based on the

treatment history and objective findings of Dr. DePaz, and while there are no

corresponding treatment notes for September 19, 2004, it is not entirely clear that no

examination precipitated this assessment or the earlier referral for psychiatric treatment

written on September 7, 2004.  (R. 466-467).  Regardless, there is an examination with

No. 1:07CV143-MMP/AK

objective findings by Dr. James Berk on August 27, 2004, who found significant pain and limitation, and at the time of the hearing in 2004 there was no contrary medical evidence of his condition at this time.  Thus, contrary to the ALJ, the record **does** support Plaintiff's allegations of pain and limitation.

       c)       <u>Treating physician's opinion</u>

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991), (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law.

**No. 1:07CV143-MMP/AK**

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957
F.2d 837, 841 (11th Cir. 1992).

Typically, a treating physician's opinion is entitled to greater weight than a one
time consultative examiner. Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984);
Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In this case, the undersigned
does not find that the ALJ's reasons for rejecting the reports and assessments of Dr.
DePaz and giving greater weight to the opinions of Drs. Chodosh and Nazario were
adequate.

The ALJ takes issue with Dr. DePaz' assessment in September 2004, because
Plaintiff had not sought treatment from him since 2001.  However, the reason Plaintiff
did not continue treatment with Dr. DePaz was not based on medical improvement or a
complete failure to seek medical treatment, but because Plaintiff moved to Alabama.
The ALJ considers Dr. DePaz' report of little value because it is based on examinations
conducted in 2001 and is unsupported by treatment notes.  However, it is not entirely
clear that Dr. DePaz did not perform an examination in conjunction with his 2004
assessments, he bases it on his treatment history since "1995 to **present**," and some
type of encounter must have precipitated the referral for psychiatric care made on
September 7, 2004.  Regardless, the examinations the ALJ does give great weight to
were also conducted three years earlier in 2001.

Also, the ALJ gives greater weight to the consultative examiners because their
opinions are based on objective clinical findings and are consistent with the medical

**No. 1:07CV143-MMP/AK**

record in its entirety.  While this might support a rejection of Dr. DePaz' 2004 functional

assessment, since there is no corresponding treatment note to support the assessment

dated September 19, 2004, there is no such basis for rejecting Dr. DePaz' opinion at the

time of the consultative examinations in 2001.  At this time, Plaintiff was seeking

ongoing treatment from Dr. DePaz, the records include treatment history and objective

findings, and therefore, there is no basis for giving greater weight to their reports over

Dr. DePaz as to Plaintiff's medical condition in late 2001.  Since the ALJ's determination

is that disability ceased on January 1, 2002, and Dr. DePaz was the only treating

physician of record at this time, his records and opinions should have been given

greater weight for this decision.  (R. 359-390).

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED AND**
**REMANDED** for further proceedings consistent with this opinion; specifically, but not

limited to the testimony of a vocational expert to consider what jobs Plaintiff might

perform with his nonexertional limitations of pain and mental illness.

At Gainesville, Florida, this  _**3**$^{rd}$_ day of February, 2009.


_**s/ A. KORNBLUM**_
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**




**No. 1:07CV143-MMP/AK**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:07CV143-MMP/AK**